PEOPLE v COLES

PEOPLE v JOSEPH GONZALES

PEOPLE v WAITS

Docket Nos. 60641, 60893, 62938. Argued March 10, 1983 (Calendar
    Nos. 11-13).—Decided October 24, 1983.

  Bruce L. Coles was convicted by a jury in the Genesee Circuit
      Court, Donald R. Freeman, J., of armed robbery, and was
      sentenced to a prison term of 15 to 25 years. The Court of
      Appeals, Danhof, C.J., and Keyes, J. (T. M. Burns, J., dissent-
      ing), affirmed (Docket No. 29343).

  Joseph Gonzales pled guilty in the St. Clair Circuit Court, Ernest
      T. Oppliger, J., to a charge of armed robbery, and was sen-
      tenced to a prison term of 15 to 40 years. The Court of Appeals,
      Danhof, C.J., and Bronson and M. J. Kelly, JJ., granted the
      people's motion to affirm the defendant's conviction and sen-
      tence by order (Docket No. 30460).

  Lonnie J. Waits was convicted by a jury in the Genesee Circuit
      Court, Donald R. Freeman, J., of delivery of heroin, and was
      sentenced to a prison term of 13 to 20 years. The Court of
      Appeals, Beasley, P.J., and D. F. Walsh and McDonald, JJ.,
      affirmed in a memorandum opinion (Docket No. 78-58).

      Each defendant appeals, arguing, *inter alia,* that the Su-
      preme Court should adopt and implement a procedure for
      appellate review of sentences and should apply the procedure
      in their cases and modify their sentences.

      In an opinion by Justice Cavanagh, joined by Chief Justice
      Williams and Justices Kavanagh, Levin, Ryan, and Brickley,
      the Supreme Court *held:*

      Review of a trial court's exercise of discretion in sentencing
      may be had on appeal upon a request by the defendant, but

REFERENCES FOR POINTS IN HEADNOTES
[1, 4, 5] 5 Am Jur 2d, Appeal and Error § 867.
[2] 5 Am Jur 2d, Appeal and Error § 976.
    21 Am Jur 2d, Criminal Law § 583.
[3] 21 Am Jur 2d, Criminal Law § 535 *et seq.*
[4, 5] 4 Am Jur 2d, Appeal and Error § 161.
    20 Am Jur 2d, Courts § 82 *et seq.*

relief will be granted only where it is found that the trial court abused its discretion to the extent that the sentence imposed shocks the conscience of the appellate court. Where warranted, *the case must be remanded to the trial court for resentencing* with a specific statement by the appellate court of the reasons for the remand. In order to aid the review of sentences, trial courts must articulate on the record at the time of sentencing the reasons for imposing a sentence.

1. Appellate courts in Michigan have not been precluded from reviewing sentences, but the scope of review is narrow. It includes review of sentencing procedure and whether a sentence was permissible under applicable statutes and the constitution, but where a sentence was found to be within statutory limits, relief generally was precluded. Relief has been granted where a sentence was determined to be cruel and unusual punishment, did not include appropriate credit for time served, violated public policy, was not based on the offense of which the defendant was convicted, was imposed as punishment for exercising the right to trial or because the trial court assumed that the defendant was guilty of a crime of which he had not been convicted or in consideration of a previous invalid conviction, exceeded the limits of the indeterminate sentencing act, was not preceded by an accurate presentence report, reflected undue emphasis on revenge, was imposed under a local sentencing policy which removed the trial court's discretion, or was imposed without affording the defendant the right of allocution.

2. The constitution and the Revised Judicature Act provide that the Supreme Court may promulgate and implement rules of practice and procedure for Michigan courts, including rules for appellate review of final judgments. A sentence imposed following a conviction is a part of the final judgment and, as such, is subject to review. Appellate jurisdiction of sentences under constitutional and statutory authority is vested in the Supreme Court, the Court of Appeals, and the circuit courts.

3. An appellate court does not have the power to resentence a defendant where it determines that resentencing is necessary, but must remand the case to the trial court after stating specifically the reasons for its remand. The Legislature intended that the power to impose a criminal sentence should rest with the trial court. Where one court has exercised jurisdiction to convict and sentence a defendant, other courts are excluded from possessing jurisdiction to impose a sentence. Additionally, public policy favors imposition of individualized, indeterminate sentences, tailored to fit the particular circum-

stances of a case and the defendant, a function best discharged by the trial court. Where the appellate court further determines that the circumstances warrant resentencing by a different judge, it may so direct.

4. Expansion of the scope of review of sentencing is not constitutionally required, but is a matter of public policy. Including limited review of the exercise of discretion by the trial court in imposing sentences will promote honesty and clarity in criminal appeals without unduly burdening the appellate courts.

5. The expansion of the scope of review of sentencing applies to these cases and currently pending direct appeals in which the issue has been raised, currently pending direct appeals in which the appellant's initial brief is not yet filed, and direct appeals filed after October 24, 1983. The requirement that trial courts state on the record the specific criteria considered in sentencing and the reasons for the nature and length of the sentence imposed applies prospectively only. Because the expansion applies to *Coles, Gonzales,* and *Waits,* the cases must be remanded to the Court of Appeals for reconsideration of the sentences imposed in light of the expanded scope of review. The Court of Appeals may either affirm the sentences or remand the cases to the trial courts for resentencing or for an explanation of the courts' reasoning in imposing sentence. The defendants' remaining issues do not amount to error which requires reversal.

Convictions affirmed, but the cases are remanded to the Court of Appeals for reconsideration of the sentences.

79 Mich App 255; 261 NW2d 280 (1977) affirmed.

*Cummins v People,* 42 Mich 142; 3 NW 305 (1879), overruled.

1. CRIMINAL LAW — APPEAL — SENTENCES.

   A criminal defendant may request review of the exercise of a trial court's discretion in imposing sentence, but relief will be granted only where it is found that the trial court abused its discretion to the extent that the sentence shocks the conscience of the appellate court.

2. CRIMINAL LAW — APPEAL — SENTENCES.

   An appellate court, upon finding that a trial court in imposing sentence in a criminal case has so abused its discretion as to shock the conscience of the appellate court, may not resentence the defendant, but must remand the case to the trial court for resentencing with a specific statement of the reasons for the remand; where warranted, the appellate court may direct that

the resentencing be done by a different judge (MCL 769.1; MSA 28.1072).

3. Criminal Law — Appeal — Sentences.

Trial courts, in order to aid the review of sentences, must articulate on the record at the time of sentencing in a criminal case the reasons for imposing the sentence.

4. Courts — Supreme Court — Jurisdiction — Criminal Law — Appeal — Sentences.

The jurisdiction of the Supreme Court to promulgate and implement rules of practice and procedure for Michigan courts is provided by the constitution and the Revised Judicature Act, including rules for appellate review of final judgments; a sentence imposed in a criminal case following a conviction is part of a final judgment and is subject to review (Const 1963, art 6, §§ 4, 5; MCL 600.212-600.223, 600.308; MSA 27A.212-27A.223, 27A.308).

5. Criminal Law — Courts — Appeal — Sentencing — Jurisdiction.

Appellate jurisdiction of sentences in criminal cases under constitutional and statutory authority is vested in the Supreme Court, the Court of Appeals, and the circuit court (Const 1963, art 6, § 4; MCL 600.212-600.223, 600.308; MSA 27A.212-27A.223, 27A.308).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people in *Waits;* and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people in *Coles.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert H. Cleland,* Prosecuting Attorney, and *C. Denton Wolf,* Chief Appellate Attorney, for the people in *Gonzales.*

*William L. Grossman* for defendant Coles.

State Appellate Defender (by *F. Martin Tieber,*

Deputy Defender and *P. E. Bennett,* Assistant Defender) for defendant Gonzales.·

*Lawson & Lawson, P.C.* (by *David M. Lawson),* for defendant Waits.

Amici Curiae:

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Mary C. Smith,* Assistant Attorney General, for the Attorney General.

*Mogill, Posner, Cohen & Weiss* (by *Marjory B. Cohen)* for Criminal Defense Attorneys of Michigan.

*Carol S. Irons* for the Prosecuting Attorneys Association of Michigan.

CAVANAGH, J. Defendant Coles, an 18-year-old with no prior record, was convicted by a jury of armed robbery[1] and sentenced to a term in prison of 15 to 25 years. His conviction and sentence were affirmed by the Court of Appeals.

Defendant Waits was convicted by a jury of delivery of heroin[2] and sentenced to a term in prison of 13 to 20 years. Defendant Waits' prior record consists of several misdemeanor convictions and a 12-year-old felony conviction of attempted larceny from an automobile. His conviction and sentence were affirmed by the Court of Appeals.

Defendant Gonzales, a 19-year-old, pled guilty as charged to armed robbery[3] and was sentenced to a term of 15 to 40 years in prison. Defendant Gonzales admitted to having been convicted of a prior

[1] MCL 750.529; MSA 28.797.
[2] MCL 333.7401; MSA 14.15(7401).
[3] MCL 750.529; MSA 28.797.

felony, although the record is unclear regarding whether he was a juvenile at that time. His presentence report indicates that his juvenile record was extensive. The Court of Appeals affirmed his conviction and sentence.

We granted leave to appeal in the three cases and directed the parties to include among the issues to be briefed whether this Court should adopt, implement, and apply a procedure for appellate review of criminal sentences and, if necessary, reconsider this Court's decision in *Cummins v People,* 42 Mich 142; 3 NW 305 (1879).[4]

## I. APPELLATE REVIEW OF SENTENCING

A. *History of Appellate Review of Sentencing in This State.*

The source of the Michigan rule regarding appellate review of sentencing apparently dates back to the 1879 case of *Cummins v People.* In *Cummins,* the defendant was convicted of breaking and entering an occupied dwelling and stealing a bottle of sherry and an unspecified quantity of cigars. Defendant was sentenced to a term of seven years in prison and argued on appeal that his sentence constituted cruel or unusual punishment. This Court held that:

"The sentence was not in excess of that permitted by statute, and when within the statute, this court has no supervisory control over the punishment that shall be inflicted. The statute gives a wide discretionary power to the trial court *upon the supposition that it will be judicially exercised* in view of all the facts and circumstances appearing on the trial."[5] (Emphasis added.)

---

[4] 412 Mich 914 (1982); 412 Mich 917 (1982).

[5] *Cummins v People,* 42 Mich 142, 144; 3 NW 305 (1879).

It is apparent from the above-quoted holding in *Cummins* that this Court did not establish a rule which precluded appellate courts from reviewing a sentence imposed upon a convicted defendant; rather, the Court merely established that the scope of review was to be a narrow one. The intended result of *Cummins* was that if an appellate court reviewed a sentence and found it to fall within the statutory limits, the court would be precluded from providing any relief to the defendant with respect to altering the punishment imposed by the trial court. The decision in *Cummins* did not preclude appellate review of a convicted defendant's sentence because only after such review could it be determined whether the trial court judicially exercised its discretion in imposing a sentence within the statutory limitations or even whether the court imposed a sentence that was illegal and subject to appellate relief.

Unfortunately, the decision in *Cummins* provided no clear standard regarding the scope of appellate review of sentences imposed within statutory limitations. Although the *Cummins* holding appears to stand for the proposition that there should be no appellate review of sentences imposed within statutory limits, this Court has regularly entertained arguments from convicted defendants who allege that a particular sentence, imposed within the statutory limit, constitutes cruel or unusual punishment in violation of the state constitution.[6] Such review is necessary because the judicial premise that the length of imprisonment for a felony is for the Legislature to determine[7] cannot be taken as absolute; statutory sentences

[6] Const 1963, art 1, § 16 states, *inter alia,* "cruel or unusual punishment shall not be inflicted".

[7] *In re Callahan,* 348 Mich 77, 80; 81 NW2d 669 (1957); *People v Harwood,* 286 Mich 96, 98; 281 NW 551 (1938).

must be subject to judicial review in order to ensure that the constitutional prohibition against cruel or unusual punishment is not violated.

This Court, in *People v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972), examined prior Michigan case law dealing with the issue of appellate review of sentences alleged to constitute cruel or unusual punishment. The Court concluded that the dominant test to be used in reviewing whether a sentence constitutes cruel or unusual punishment is whether the punishment is so excessive that it is completely unsuitable to the crime. In addition to examining this test of the proportionality of the sentence imposed to the offense committed, the Court looked to comparative law from other states in order to determine what punishment is considered appropriate for a given offense. Under this test, the definition of cruel or unusual punishment becomes a flexible one, changing with the evolving standards of decency as expressed by similar penal statutes. Finally, the Court also concluded that a punishment may be considered unconstitutionally cruel or unusual if it thwarts the rehabilitative potential of the individual offender and does not contribute toward society's efforts to deter others from engaging in similar prohibited behavior. On the basis of these three tests, this Court concluded in *Lorentzen* that the statute pertaining to the sale of marijuana violated the prohibition against cruel or unusual punishment, and the defendant's sentence was vacated.

Although there is a long line of cases which indicates this Court's unwillingness to review sentences which are within legal limits,[8] appellate

---

[8] *Cummins v People,* 42 Mich 142, 144; 3 NW 305 (1879); *Newaygo County Prosecutor v Newaygo Circuit Judge,* 69 Mich 610, 613-614; 37 NW 701 (1888); *People v Morris,* 80 Mich 634, 637; 45 NW 591 (1890); *People v Smith,* 94 Mich 644, 646; 54 NW 487 (1893); *People v*

review of sentences historically has encompassed more than the limited considerations whether the sentence imposed was within the statutory limits and whether it constituted cruel or unusual punishment in violation of the constitution. This Court has granted relief to a defendant whose sentence did not include the appropriate credit for time served,[9] whose sentence violated public policy,[10] and whose sentence was not based upon the offense for which the defendant had been convicted.[11]

In recent years, the scope of review of sentences has become broader. Sentences have been vacated when imposed as punishment for exercising the right to trial instead of pleading guilty or for waiting until the day of trial to plead guilty,[12] or when imposed by the trial court under the assumption that the defendant was guilty of a crime of which he had not been convicted or in consideration of a previous conviction which was invalid.[13] In addition, this Court held in *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972), that a sentence imposed under the indeterminate sentence act may not include a minimum term which exceeds two-thirds of the maximum term. Defen-

---

*Whitney,* 105 Mich 622, 627; 63 NW 765 (1895); *People v Jagosz,* 253 Mich 290, 292; 235 NW 160 (1931); *People v Paton,* 284 Mich 427, 429; 279 NW 888 (1938); *People v Harwood,* 286 Mich 96, 98; 281 NW 551 (1938); *People v Commack,* 317 Mich 410, 415; 26 NW2d 924 (1947); *People v Connor,* 348 Mich 456, 463; 83 NW2d 315 (1957); *People v Krum,* 374 Mich 356, 362; 132 NW2d 69 (1965); *Lane v Dep't of Corrections, Parole Board,* 383 Mich 50, 60; 173 NW2d 209 (1970); *People v Malkowski,* 385 Mich 244, 247-248; 188 NW2d 559 (1971).

[9] *Moore v Parole Board,* 379 Mich 624; 154 NW2d 437 (1967).

[10] *People v Baum,* 251 Mich 187; 231 NW 95 (1930).

[11] *People v Hoaglin,* 262 Mich 162; 247 NW 141 (1933); *People v Ancksornby,* 231 Mich 271; 203 NW 864 (1925).

[12] *People v Courts,* 401 Mich 57; 257 NW2d 101 (1977); *People v Earegood,* 383 Mich 82; 173 NW2d 205 (1970).

[13] *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972); *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974).

dants are to receive an updated, accurate presentence report, and the trial court's failure to provide such a report and rely on it may require resentencing.[14] A sentence reflecting undue emphasis on revenge or one imposed pursuant to a local sentencing policy which removes the trial court's discretion to individualize sentences is infirm.[15] Defendants are also guaranteed the right of allocution prior to being sentenced and must be resentenced if this right is violated.[16]

It is thus clear that appellate review of sentences to date has included both the procedural consideration of how the defendant was sentenced as well as a consideration of whether the substance of the sentence was statutorily or constitutionally permissible. What is now at issue is whether we should more clearly expand the scope of appellate review to include a review of the trial court's exercise of discretion in sentencing a defendant when the sentence falls within statutory limits which do not constitute cruel or unusual punishment, when the sentence does not violate the rule established in *Tanner, supra,* when the trial court has not relied upon impermissible considerations, and when the court rules relating to sentencing procedures were properly followed. The prosecutors argue that this Court has no authority to expand the scope of appellate review of sentences into the area of the exercise of the trial court's discretion and that there is no need for such an expansion because the present scope of judicial and executive review of sentencing adequately protects a defendant's rights. Defendants respond by arguing that not only does this Court

---

[14] *People v Triplett,* 407 Mich 510; 287 NW2d 165 (1980).

[15] *People v Chapa,* 407 Mich 309; 284 NW2d 340 (1979); *People v Ensign (On Rehearing),* 112 Mich App 286; 315 NW2d 570 (1982).

[16] *People v Berry,* 409 Mich 774; 298 NW2d 434 (1980).

have the authority to expand the scope of appellate review of sentences but that the need for such expansion is compelling and the time has come for this Court to take such a step.

B. *Authority of This Court to Engage in Appellate Review of Sentencing.*

The prosecutors in these cases assert that this Court does not have the authority to institute, by case law, appellate review of sentences. As we have noted, and the prosecutors have agreed, some form of review of sentencing already exists. Indeed, the prosecutors rely on the existence of limited review of sentences to demonstrate that a defendant's rights are adequately protected. However, since the authority of this Court has been questioned, it is beneficial to examine the sources of judicial power regarding the sentencing process.

Although mindful of the fact that Const 1963, art 6, § 5 gives this Court the power to promulgate and implement rules of practice and procedure for Michigan courts, it is argued that, except where there are constitutional provisions otherwise, the right to an appeal is strictly a matter of legislative prerogative, and it is solely within the Legislature's province to determine in what cases, under what circumstances, and from what courts, appeals may be taken. *Moore v Spangler,* 401 Mich 360, 368-369; 258 NW2d 34 (1977); *Chicago, D & C G T J R Co v Simons,* 210 Mich 418, 420; 178 NW 12 (1920). The jurisdiction of a court to entertain an appeal in a certain matter is thus established by the constitution or by statute, and this Court may not, by rule or otherwise, enlarge or diminish such jurisdiction.

While it is argued that no constitutional or statutory authority vests this Court with jurisdiction to engage in appellate review of sentencing,

the defendants point out that no constitutional or statutory provision exists which limits the review power of this Court or precludes it from passing upon the propriety of sentences imposed by trial courts. In addition, the defendants assert that the constitutional right to an appeal in a criminal case includes the right to sentence review.

This Court's general review power is grounded in Const 1963, art 6, § 4, which provides in part:

"The supreme court shall have general superintending control over all courts; power to issue, hear and determine prerogative and remedial writs; and appellate jurisdiction as provided by rules of the supreme court."

The judicial power of this Court has been further defined in MCL 600.212-600.223; MSA 27A.212-27A.223, which, *inter alia,* grant appellate jurisdiction over any matter or question of law brought before the Court in an authorized manner and grant the Court the power to promulgate and amend general court rules governing the practices and procedures in all courts of record. These rules may include practices and procedures for the method of review of decisions from inferior tribunals. Furthermore, this Court has defined its authority, as permitted by the foregoing constitutional and statutory provisions, to include the power to:

"Give any judgment and make any order which ought to have been given or made, and make such other and further orders and grant such relief as the case may require." GCR 1963, 865.1(7).

Thus, it is clear that this Court has a broad

jurisdiction and far-reaching powers in the area of appellate review.

Jurisdiction in the Court of Appeals is conferred by statute, although this Court prescribes the rules of practice and procedure in that Court.[17] MCL 600.308; MSA 27A.308 confers jurisdiction upon the Court of Appeals to entertain appeals from, *inter alia:*

"[1](a) All final judgments from the circuit court, court of claims, and recorder's court * * *.

"[2](d) Such other judgments or interlocutory orders as the supreme court may by rule determine."

We conclude that a sentence following a conviction is as much a part of the final judgment of the trial court as is the conviction itself. Since the Court of Appeals has jurisdiction to hear appeals from final judgments of trial courts, whether the appeal be one to which a defendant is absolutely entitled or one in which a defendant must apply for leave to appeal, the Court of Appeals has jurisdiction to hear appeals involving a review of a defendant's sentence. We find no sound reason for interpreting the applicable constitutional and statutory provisions as carving out an exception to the right of appeal regarding sentencing matters. None of those relevant provisions limit the particular issues subject to appellate review. We therefore conclude that the foregoing constitutional and statutory authority vest appellate courts with the jurisdiction to review all sentencing issues.

The foregoing analysis applies not only to the appellate jurisdiction of the Court of Appeals, but also to that of the circuit court[18] and of this

---

[17] Const 1963, art 6, § 10.

[18] Const 1963, art 6, § 13; MCL 600.601; MSA 27A.601.

536 MICH 523 [Oct

Court. To the extent that the decision in *Cummins, supra,* is read to hold that an appellate court does not have the authority to review a convicted defendant's sentence, we disavow such a conclusion.

However, an appellate court's authority to consider appeals involving sentencing issues and that court's authority to resentence the defendant on appeal are two separate matters. If the court determines that resentencing is necessary, the case must be remanded to the trial court. The appellate court may direct that the defendant be resentenced by a different judge if the court determines that is warranted by the circumstances.

We reach this conclusion for two principal reasons. First, the Legislature has indicated its intention to confer upon the trial courts alone the power to impose criminal sentences. Second, policy considerations dictate that sentencing should remain the responsibility of the trial courts.

The jurisdiction to impose a sentence is set forth in MCL 769.1; MSA 28.1072, as follows:

"A judge of a court having jurisdiction is authorized and empowered to pronounce judgment against and pass sentence upon a person convicted of an offense in a court held by that judge. The sentence shall not be in excess of the sentence prescribed by law."

The forerunner to this provision expressly included justices of the Supreme Court and judges having jurisdiction over criminal cases among those possessing authority to impose a sentence.[19]

---

[19] MCL 769.1; MSA 28.1072 formerly provided:

"The justices of the supreme court, or any of them, or any of the several circuit judges in the respective circuits, or any judge of a court of record having jurisdiction of criminal cases, in this state, are hereby authorized and empowered to pronounce judgment against and pass sentence upon all persons heretofore convicted, or that may

We read MCL 769.1; MSA 28.1072 now to exclude other courts from possessing jurisdiction to impose a sentence where one court has already exercised jurisdiction to convict and sentence a defendant.

In addition, the policy of this state favors individualized sentencing for every convicted defendant. The sentence must be tailored to fit the particular circumstances of the case and the defendant. *People v McFarlin,* 389 Mich 557, 574; 208 NW2d 504 (1973). As we stated recently in *People v Pulley,* 411 Mich 523, 529-530; 309 NW2d 170 (1981):

"To so tailor the sentence, the judge must gather complete and detailed information about the offender. The judge must assess the reliability of the information received, assure that it is reasonably up-to-date, determine its competency as a sentencing consideration, and resolve challenges to its accuracy."

This process entails the need for a certain amount of factfinding which is best discharged by the trial court. Appellate courts were not established to engage in any significant factfinding functions, and, were they to resentence a defendant, such a function would become necessary, lest they have only a skeletal picture from which to determine the propriety of a given sentence. Furthermore, a defendant's right to allocution prior to sentencing might have to be extended to a defendant being resentenced at the appellate level, especially when a significant amount of time has passed between the original sentencing in the trial court and the resentencing in the appellate court. Such a re-

hereafter be convicted in any court held by said justices, or judges, or any of them, for any offense heretofore committed or that may hereafter be committed against the laws of this state: Provided, That such sentence shall in no case or respect be greater than the penalty now or that may be prescribed hereafter by law."

quirement would further burden the appellate process, and thus we conclude that imposing the duty to resentence a defendant on the appellate courts is both unnecessary and unwise.

It is also argued that if this Court were to adopt and implement a procedure to expand the appellate review of sentences, it would encroach upon the duties and responsibilities of the legislative and executive branches of this state.

Our attention is directed to this Court's decision in *In re Callahan,* 348 Mich 77, 80; 81 NW2d 669 (1957), in which we held that the Legislature has the exclusive authority to determine the appropriate length of imprisonment for a felony and that a court, in imposing a sentence, has only limited discretion to act within the parameters set forth in the statute. We continue to adhere to this view. See *Brinson v Genesee Circuit Judge,* 403 Mich 676, 681; 272 NW2d 513 (1978). We believe that the people of this state, through their elected legislative representatives, are the appropriate ones to determine what specific punishment a defendant should receive for the conviction of a given crime.

However, instead of adopting a scheme of presumptive sentencing, which would specify a definite term of punishment for each act declared to be a crime, the Legislature chose to adopt a scheme of indeterminate sentencing, which directs courts to sentence certain defendants to a minimum and maximum term of punishment.[20] In order to ensure that the purpose of indeterminate sentencing could not be undermined by a sentencing court, this Court held in *Tanner, supra,* that any sentence which provides for a minimum term which exceeds 2/3 of the maximum is improper

[20] MCL 769.8; MSA 28.1080.

because it fails to comply with the indeterminate sentence act. We reached this conclusion on the ground that too short an interval between the minimum and maximum sentence given by the trial court prevented the sentence from being indeterminate.

Indeterminate sentencing, by its very nature, requires the trial court to exercise a certain degree of discretion in the imposition of a sentence. This does not amount to an encroachment by the judiciary into the legislative prerogative of establishing punishment for crimes. As we stated in *In re Southard,* 298 Mich 75, 82; 298 NW 457 (1941):

"The policy expressed by the people, in providing by constitutional amendment for an indeterminate sentence law, directed the legislature to adopt a flexible law and the courts to fit the punishment in the exercise of their discretion to the needs of the particular case. In no other way could the will of the people be carried into effect. A discretion must be exercised in order to have indeterminate sentences."

The judicial power to exercise discretion in the imposition of sentences is thus an integral part of the legislative scheme of indeterminate sentencing, and it will always remain that unless removed or curtailed by the Legislature. *Southard,* p 81. It is this exercise of discretion that we intend to now subject to a limited appellate review, and any such review will in no way interfere with the Legislature's ability to maintain or change the method of sentencing in this state.

In addition, we are not persuaded that an expanded appellate review of sentencing will infringe upon the exclusive power of the Governor to modify or reduce sentences. See Const 1963, art 5, § 14. Although we have faithfully guarded the

Governor's prerogative under the foregoing constitutional provision,[21] we have also held that a court clearly has the authority to set aside a previously imposed invalid sentence and impose a new one without infringing upon any power granted to the Governor. *People v Whalen,* 412 Mich 166, 169; 312 NW2d 638 (1981). As previously discussed, this Court has already established certain circumstances in which a sentence will be held invalid. See also *Whalen,* pp 169-170. All we do today is add to the list another set of circumstances in which a sentence may be declared invalid. In such a situation, it is the responsibility of the courts to correct error and resentence the defendant to a valid sentence. As we stated in *People v Murray,* 72 Mich 10, 17; 40 NW 29 (1888):

"It will not do to say the executive may apply the remedy in such a case [in which a sentence within the statutory limits was held to be clearly excessive]. We do not know what the executive may do, and it is but a poor commentary upon the judiciary when it becomes necessary for the executive to regulate the humanity of the bench."

C. *The Need for Greater Appellate Review of Sentences.*

In *People v Burton,* 396 Mich 238, 243; 240 NW2d 239 (1976), this Court stated:

"We appreciate that a strong case can be made for appellate review of sentencing. This Court is not, however, yet prepared to take that step."

Since this Court is now taking a step toward that

---

[21] *People v Fox,* 312 Mich 577, 581-582; 20 NW2d 732 (1945).

goal, it is incumbent upon us to examine the arguments both for and against expanding the current scope of appellate review of sentencing.

Those in favor of a wider scope of appellate review of sentencing argue that the network of protections and safeguards attendant to the determination of a defendant's guilt should not vanish at the conclusion of the guilty plea or conviction. The amount of time in loss of liberty which a defendant faces is also of critical importance both to the defendant and the people of this state, yet, currently, sentencing is discretionary with the trial judge, checked only by the statutory boundaries set down by the Legislature.[22] A product of such unchecked discretion is alleged to be a denial of the defendant's procedural due process rights which include an appeal as a matter of right from the final judgment of the trial court.[23] Such an appeal was intended to include the right of appeal of sentences. This argument continues that to foreclose the traditional checks and balances on the trial court and to allow the exercise of the court's discretion on so fundamental an issue as sentencing to go unreviewed constitutes a fundamental unfairness and violates a defendant's

[22] "It is one of the transcendent ironies of our system of criminal justice that at sentencing, precisely the point where most is at stake, the judge is unceremoniously cut adrift from all the moorings of law and principle that restrict him at every other point in the process. He is afloat in the dark, with little to guide him, no codified set of criteria, nothing to help him with the most important decision he has to make. His conduct of a trial is circumscribed by dozens of rules, precedents, and statutes. He may comment on evidence only in carefully specified circumstances, and only in jurisdictions (such as federal courts) that permit it. He rules on the admissibility of evidence in accordance with a body of law refined through centuries of courtroom combat. His charge to a jury must hew to limits prescribed by the nature of the offense, the available options, and hallowed precedent. But in sentencing, nothing—one to fourteen, five to life, thirty days to two years, and only his mind and heart to go on." Jackson, *Judges* (New York: Atheneum, 1st ed, 1974), p 360.

[23] Const 1963, art 1, § 20.

rights to due process of law under the Michigan Constitution.

As previously discussed, appellate review of a defendant's sentence, though limited, already exists in this state. Defendant's due process right to be sentenced to an ascertainable term of punishment within statutory limits which do not constitute cruel or unusual punishment has been carefully guarded by the appellate courts. In addition, this Court has protected a defendant's procedural due process right to be sentenced on the basis of legally valid considerations. We do not agree that the constitutionally guaranteed right of appeal mandates review of the trial court's exercise of discretion in sentencing in order to comport with due process of law. The expansion of the scope of appellate review of sentencing is a matter of public policy within this Court's power to adopt; it is not constitutionally required.

Those who favor a broader appellate review of sentencing argue that another product of the unchecked discretion exercised by the trial courts is the imposition of an unjust sentence, which may be excessively severe, excessively lenient, or excessively disparate in relation to similarly situated defendants who have committed similar crimes. The result of such sentences is said to be a feeling of betrayal on the part of the defendant and the public, with confidence in the criminal justice system correspondingly diminished.[24]

The excessively severe sentence is one which far exceeds what all reasonable persons would per-

---

[24] The Sentence Review Committee commissioned by this Court on July 22, 1981, and chaired by Court of Appeals Judge DANIEL F. WALSH, conducted an extensive study regarding the need for a change in the general rule that sentences within legal limits are not reviewable and concluded that these types of sentences presented problems which need to be addressed.

ceive to be an appropriate social response to the crime committed and the criminal who committed it. However, when such a sentence falls within the statutory maximum term, a defendant has rarely been able to obtain relief on the ground that the sentence constitutes cruel or unusual punishment. In contrast, the excessively lenient sentence is one which falls far short of what all reasonable persons would perceive to be an appropriate social response to the crime committed and the criminal who committed it. Despite the significant public outcry usually generated by such a sentence, relief has not been obtainable to vindicate the perceived wrong done to the public.

Those who favor restricted sentence review argue that there are only a very small number of sentences imposed each year which, because of being too harsh or too lenient, shock the conscience of the community. Opening the appellate doors to review of all sentences will allegedly result in a great wave of burdensome appeals, creating additional great public expense. In addition, because of all the factors which contribute to a trial court's decision on sentencing, meaningful review of judicial discretion in this area will be extremely difficult. In order for an appellate court to review a sentence, it must have before it every factor which the trial court considered, a virtually impossible task. Thus, if sentence review is to be made available in every case, the burden upon the already overloaded appellate system will be enormous.

We are not convinced that expanding the appellate scope of review to include a limited review of the trial court's exercise of discretion will result in a flood of appeals. Many defendants now appeal their convictions simply because of their dissatis-

faction with the severity of their sentences, not because they want to contest the finding of guilt. Their appeals must presently be based upon the subterfuge of attacking their convictions rather than directly attacking what concerns them most, the appropriateness of their sentences. Moreover, such defendants sometimes win because the appellate judges agree that their sentences are inappropriate and strain the law to reach the desired relief. As noted by the American Bar Association, in the Introduction to ABA Standards for Criminal Justice Relating to Appellate Review of Sentences (2d ed), p 20.5:

"Overt appellate review [of sentences] serves to focus appeals on what is really at stake, to the benefit both of future sentences and of the doctrine of harmless error. It also avoids an unnecessary retrial where only the sentence is defective."

We believe that a wider scope of sentence review will promote honesty and clarity in criminal appeals rather than unduly burden appellate courts with an increasing number of appeals.

In addition, even if the number of sentences reviewed under a broader standard which would warrant relief are few, any injustice committed is still deserving of a remedy. Although it is argued that a defendant may request relief from the Governor from an excessively severe sentence, we believe that there should be some means by which the judiciary can correct an injustice inflicted by the improper actions of one of its officials. The continued life of the judicial process depends upon the maintenance of public confidence in the courts, and such confidence depends upon the perception that the courts will dispense justice.

The excessively severe and the excessively len-

ient sentences are not the only ones which have been identified as being in need of appellate review. Another type of sentence alleged to constitute an injustice is the sentence which is significantly disproportionate to the sentences generally imposed upon similarly situated defendants who have committed similar crimes. For any one offense there is often a wide range of sentences available, and sentencing judges have demonstrated a significant variety of attitudes when it comes to deciding what constitutes an appropriate sentence. Thus, it is possible to find two defendants within the same prison system who have similar backgrounds, who were convicted of the same crime under similar facts and circumstances, and yet one is serving a disproportionately longer term of imprisonment. Such disparity in sentences, it is argued, does not merely result from permissible factors such as the culpability and background of the defendants; rather, it often arises from impermissible considerations such as the race of the defendant, his economic status, or the personal bias and attitude of the individual sentencing judge. Increased uniformity in sentencing similarly situated defendants is said to be in keeping with our constitutional concept of a unified judiciary in this state.[25]

This argument is not without its vocal critics. The idea that sentences should be uniform throughout the state is argued to be inconsistent with the traditional views of the function of sentencing in the criminal process. The effect of a crime on the community in which it occurred and the deterrent effect of the resultant punishment on the persons who live and work in that community have always been considered relevant factors

---

[25] Const 1963, art 6, § 1.

to be weighed by the trial judge. It is suggested that the interplay between society and crime varies greatly from community to community and that it is not reasonable to believe that every community in this state has, or should have, the same interest in preventing and punishing each type of crime.

We are not prepared at present to decide whether disparity in sentencing may result from the different priorities of the community in which a defendant committed an offense. However, we do agree that disparity in sentences which results from considerations such as the race or economic status of a defendant or the personal bias and attitude of an individual sentencing judge is unjustified and impermissible. Unjustified disparities promote disrespect for the criminal justice system and resentment among prisoners, thus impairing their morale and motivation for rehabilitation.[26] We conclude that such sentences should be subject to appellate review and relief when warranted.

D. *Appellate Review of Sentences in Other Jurisdictions.*

The American Bar Association has made the following observation regarding appellate review of sentences in this country:

[26] Following the riots in May, 1981, at the State Prison of Southern Michigan, the Michigan Reformatory at Ionia, and the Marquette Branch Prison, then-Governor Milliken appointed the Special Committee on Prison Disturbances which was chaired by former Supreme Court Justice LAWRENCE B. LINDEMER. One of the committee's conclusions was that:

"While there may be good reason for such disparity [in sentences imposed by different trial judges for the same crime], the fact that there is no review possible of sentences and that the disparity seems to be a result of geography, tends to breed anger and frustration in prisoners which leads to behavior control problems in the institution." Report of the Special Committee on Prison Disturbances to Governor William G. Milliken, August 4, 1981, p 37.

The committee recommended that the Supreme Court or the Legislature address the problem of disparity in sentences.

"The number of jurisdictions in this country in which appellate review of sentences is available is steadily growing. Over half of the states now permit review of the merits of sentences in some circumstances. The principle that there ought to be appellate review of sentences, particularly of sentences imposed in serious cases, is now widely accepted."[27]

Indeed, our research indicates that there are at most only ten states in this country which do not allow any form of appellate review of sentences. The remaining states, either by statute, court rule, or case law, allow some form of appellate review of sentences, although the scope of review varies widely from state to state.

States which provide for appellate review of sentences by statute or by court rule have established a procedure for such review either within the existing appellate structure or by way of a separate review panel which then has the authority to increase or decrease a sentence imposed by the trial court. In some states the decision of the review panel may not be reviewed on appeal whereas other states allow an appeal from such a panel, but apply a limited scope of review.[28]

States which provide for appellate review of sentences by case law generally apply an "abuse of discretion" standard, although this can mean anything from a virtually *de novo* sentencing to an almost total preclusion of relief. Other standards used include findings that the sentencing court was "clearly mistaken", committed "clear legal

[27] ABA Standards for Criminal Justice Relating to Appellate Review of Sentences (2d ed), Commentary to Standard 20-1.1, p 20.7.

[28] See, *e.g.,* Alas Stat 12.55.120; Ariz Rev Stat 13-4032—13-4033; Iowa Code Ann 814.20; Mont Code Ann 46-18-901; Neb Rev Stat 29-2308; NH Rev Stat Ann 651:57—651:61; Tenn Code Ann 40-20-111; Wis Stat Ann 974.05-974.06.

error", or imposed a sentence which "shocks the conscience" of the reviewing court.[29]

In light of the extensive literature devoted to the issue of appellate review of sentencing, we will not take time here to examine in depth the review practices currently available in other jurisdictions.[30] It is sufficient for us to note that we have examined many of these authorities and have arrived at the conclusion that, like most of the other states in this country, our state should extend some form of appellate review to those defendants who desire to challenge the trial court's exercise of discretion in imposing sentence.

E. *Conclusion.*

In light of the foregoing analysis, we conclude that the existing scope of appellate review of sentences should be expanded. We are aware that there are a variety of proposals in existence at the present time which address this issue;[31] however,

[29] See, *e.g., State v Tuttle,* 21 Wis 2d 147; 124 NW2d 9 (1963); *State v Johnson,* 67 NJ Super 414; 170 A2d 830 (1961); *Commonwealth v Green,* 396 Pa 137; 151 A2d 241 (1959); *State v Houston,* 273 SE2d 375 (W Va, 1980).

[30] See, *e.g.,* Mueller and Le Poole, *Appellate Review of Legal but Excessive Sentences: A Comparative Study,* 21 Vand L Rev 411 (1968); Kutak and Gottschalk, *In Search of a Rational Sentence: A Return to the Concept of Appellate Review,* 53 Neb L Rev 463 (1974); Norris, *Appellate Review of Sentencing,* 53 Mich Bar J 344 (1974); Labbe, *Appellate Review of Sentences: Penology on the Judicial Doorstep,* 68 J Crim L & Criminology 122 (1977).

[31] This Court recently issued Administrative Order 1983-3 which requests every judge of a circuit court and of the Recorder's Court of the City of Detroit to use the guidelines established by the Sentencing Guidelines Advisory Committee for a period of one year, beginning May 1, 1983. The purpose of the sentencing guidelines is to ensure that sentencing decisions focus on a consistent set of legally relevant factors and to ensure that these factors are assigned equal importance for all offenders. This should result in sentences which are imposed in a predictable, coherent, and consistent manner, thus eliminating impermissible disparity in the sentences of similarly situated defendants. The use of the guidelines is not mandatory, but the judges are urged to use them and comment upon them during this experimental period.

in the meantime, we need to adopt some means to review the trial court's exercise of discretion in sentencing. We intend this step toward greater review of sentencing to be a starting point. The scope of review may subsequently evolve, by means of case law or statutory enactment, into something more definite or even different from that which we announce today.

We first hold that, in order to aid the appellate review process, the trial court must at the time of sentencing articulate on the record its reasons for imposing the sentence given. Articulating reasons for imposing a sentence improves the justification for the sentence and serves to develop a rational policy on which to base sentencing in the future.[32] As the United States Court of Appeals for the Second Circuit stated in *United States v Brown,* 479 F2d 1170, 1172-1173 (CA 2, 1973):

"Were we writing on a clean slate, we might well be persuaded in favor of a requirement that the sentencing judge state his reasons. Such a rule would be 'a powerful safeguard against rash and arbitrary decisions' at this crucial stage of the criminal process where the defendant's liberty is at stake. * * * It would serve 'to promote thought by the decider, to compel him to cover the relevant points, to help him eschew irrelevancies—and, finally, to make him show that these necessities

House Bill No. 4260, introduced on March 15, 1983, would create a sentencing guidelines commission to provide for the development and dissemination of sentencing guidelines, the application of which would be mandatory. The bill would also create a sentence review panel in the Court of Appeals and require certain procedures for sentence appeals.

[32] We also note that this holding is consistent with the spirit of MCL 769.8; MSA 28.1080, which states in relevant part:

"Before or at the time of imposing the sentence the judge shall ascertain by examination of the convict on oath, or otherwise, and by other evidence as can be obtained tending to indicate briefly the causes of the criminal character or conduct of the convict, which facts and other facts which appear to be pertinent in the case, the judge shall cause to be entered upon the minutes of the court."

have been served.' * * * It would also promote fairness by minimizing the risk that the sentencing judge might rely on misinformation or on inaccuracies in the pre-sentence report. * * * If a misapprehension on the court's part were disclosed, the defendant and his counsel would then have the opportunity to answer and explain, pointing out the error. A Sphinx-like silence on the court's part precludes anyone (including the parties, the judge, and an appellate tribunal) from learning whether he acted in error. Furthermore, a statement of reasons by the court could prove to be of considerable assistance to prison and parole authorities in later determining the type of institution in which the defendant should be incarcerated and the time and conditions of parole."

This Court noted in *People v Snow,* 386 Mich 586, 592; 194 NW2d 314 (1972), that the proper criteria for determining an appropriate sentence include: (1) the disciplining of the wrongdoer, (2) the protection of society, (3) the potential for reformation of the offender, and (4) the deterring of others from committing like offenses. This list is not exhaustive, and we do not purport to instruct the trial courts on every criterion which they must consider when imposing a sentence. However, we do now require that the trial court state on the record which criteria were considered and what reasons support the court's decision regarding the length and nature of punishment imposed.

We next hold that an appellate court shall, upon a defendant's request in an appeal by right or in an appeal by leave granted, review a trial court's exercise of discretion in sentencing, but may afford relief to the defendant only if the appellate court finds that the trial court, in imposing the sentence, abused its discretion to the extent that it shocks the conscience of the appellate court. If under this

standard the appellate court deems that resentencing is warranted, the appellate court shall, after specifically stating its reasons for such action, remand the case to the trial court for resentencing. The trial court then may, upon resentencing, raise or lower the term of the defendant's punishment in light of the concerns expressed by the appellate court.

None of the cases before us are appeals which were initiated by the prosecutor. For that reason, and for the reason that we have granted leave to appeal in several other cases involving the general issue of the prosecutor's right to appeal,[33] we take no position at this time regarding the prosecutor's right to appeal the length of a defendant's sentence. We recognize that there are valid arguments both in favor of and against the allowance of prosecutor-initiated appeals of sentences, but we will reserve decision on this issue for a more appropriate time.

To the extent that this Court's decision is in conflict with the holding in *Cummins, supra,* we expressly overrule that holding.

Our decision to expand the scope of appellate review of sentences to include a limited review of the trial court's exercise of discretion applies to the three cases before us as well as to: (1) currently pending appeals in which the issue has been raised, (2) currently pending appeals in which the appellant's initial brief has not yet been filed, and (3) appeals filed after the date of this decision. The rule requiring trial courts to state on the record the specific criteria considered in sentencing and the reasons for the nature and length of the

---

[33] *People v Cooke,* Docket No. 68974, and *People v Robinson,* Docket No. 69972, which concern the scope of a prosecutor's right to appeal, were heard by this Court in June, 1983.

sentence imposed is to be given only prospective application from the date of this decision.

Since our decision to expand the scope of appellate review of sentences is to be applied to the three cases before us, we remand these cases to the Court of Appeals for reconsideration of the defendants' sentences in light of the now applicable standard of review. The Court of Appeals may in turn either affirm the sentences or remand the cases to the trial courts for resentencing or for an explanation of the courts' reasons in imposing a given sentence.

## II. DEFENDANTS' REMAINING ISSUES ON APPEAL

A. *Defendant Coles.*

Defendant Coles, in his second issue on appeal, claims that his in-court identification by the complaining witness was prejudicially tainted by a prior photographic show-up and line-up. We disagree. We first note that the defendant failed to move for suppression of the complaining witness's in-court identification and failed to object to the witness's identification testimony. Thus, the question of suggestiveness is not properly preserved for review by this Court. *People v Lee,* 391 Mich 618, 626-627; 218 NW2d 655 (1974).

In addition, our examination of this record does not indicate that the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification". *Lee, supra,* p 626. Further, we note that there was an adequate independent basis for the complaining witness's identification. The witness had observed the defendant at close range for at least a minute and watched from the back of the brightly lit store for approximately

ten minutes or more as the defendant operated the cash register while his confederates waited on customers. In light of the foregoing, we find no error pertaining to this issue which requires reversal.

Defendant Coles next argues that he was denied his right to a fair and impartial jury when his codefendant pled guilty after participating in the jury selection and the trial court failed to give a cautionary instruction *sua sponte.* This specific issue was not raised or argued by the defendant in the trial court or in the Court of Appeals. However, Judge T. M. BURNS raised the issue on his own initiative by way of dissent in the Court of Appeals decision, and the Court of Appeals majority responded to it and found no error. We agree. Defendant did not request a cautionary instruction and, although we agree that it is better practice for the trial court to give an instruction explaining that the fact that one defendant has admitted his guilt must have no bearing on the question of whether the remaining defendant is guilty, there is no requirement that an instruction of this type must be given *sua sponte.* We find that no manifest injustice resulted from the failure to give such an instruction.

Lastly, defendant Coles argues that he was denied the effective assistance of counsel by his trial attorney's failure to move for a mistrial or request a cautionary instruction with regard to the identification procedures and testimony and his codefendant's midtrial guilty plea. We disagree. We find no error of a magnitude to constitute ineffective assistance of counsel under the principles announced by this Court in *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977).

B. *Defendant Gonzales.*

Defendant Gonzales argues that he is also entitled to resentencing because the trial judge based his sentence solely on the seriousness of the charge and failed to respond to the defendant's objections to inaccuracies in the presentence report. In light of the fact that we are remanding the defendant's case to the Court of Appeals for reconsideration of the sentence imposed, we direct the Court to give plenary consideration to this issue as well.

C. *Defendant Waits.*

Defendant Waits argues that he is entitled to a reversal of his conviction and a new trial because various instances of prosecutorial misconduct occurred during his trial. He claims that the trial judge's failure to prevent them constituted an abuse of discretion. We have carefully reviewed the record and do not find that the defendant's claims, which were preserved for appeal by an appropriate objection, rise to a level of magnitude requiring a new trial. Although the actions of the prosecutor were at times overzealous, we do not find that the trial judge abused his discretion in failing to prevent such conduct or that any manifest injustice resulted to the defendant.

Defendant Waits also argues that he is entitled to a new trial because the trial judge abused his discretion in denying a motion for a mistrial based upon the non-responsive testimony of a prosecution witness. The testimony in question indicated that the defendant had been involved in previous similar drug transactions.

Although we agree that the answer was unresponsive and improper, we do not conclude that a mistrial was warranted under these circumstances. A mistrial should only be granted where the inci-

dent is so egregious that the prejudicial effect can be removed in no other way. It is for this reason that the declaration of a mistrial necessarily rests in the sound discretion of the trial judge who observed the incident giving rise to the mistrial request and who is in a better position to evaluate the allegations of prejudice and the possibility of its removal short of a mistrial. Here, the trial judge concluded that the unresponsive answer was short, was not elicited by the prosecutor, and was not prejudicial to the defendant to the extent that a mistrial was warranted. Defense counsel should have sought a curative instruction, but failed to do so. We find no abuse of discretion in the trial judge's decision to deny the motion for a mistrial.

The convictions of defendants Waits, Gonzales, and Coles are affirmed. The cases are remanded to the Court of Appeals for reconsideration of the sentence imposed on each defendant.

WILLIAMS, C.J., and KAVANAGH, LEVIN, RYAN, and BRICKLEY, JJ., concurred with CAVANAGH, J.

BOYLE, J., took no part in the decision of this case.