PEOPLE v MILES

Docket No. 89630. Submitted October 9, 1986, at Marquette. Decided
    December 1, 1986.
    Devouras C. Miles was convicted of voluntary manslaughter
        following a bench trial in Detroit Recorder's Court and was
        sentenced to prison for not less than ten years nor more than
        fifteen years, a sentence in excess of that recommended in the
        sentencing guidelines, Evelyn K. Cooper, J. Defendant ap-
        pealed.

    The Court of Appeals *held:*

    1. The trial court erred by not indicating on the record the
        reasons for imposing sentence. It is not clear from the record
        what criteria the court considered in sentencing or the reasons
        supporting the sentence given.

    2. Defendant's claim that the sentence imposed was excessive
        cannot be decided until the trial court states on the record its
        reasons for the sentence imposed. Remand is necessary for the
        trial court to articulate on the record the reasons and criteria
        for the sentence.

    3. On remand, the trial court must state the reasons for its
        departure from the sentencing guidelines on both the record
        and the Sentencing Information Report, and more than a mere
        citation to the "ends of justice" is necessary for the explanation
        of the departure to be sufficient.

    Remanded.

1. CRIMINAL LAW — SENTENCING — RECORD.
    A trial court is required to indicate on the record the criteria
        considered in imposing a sentence and the reasons which
        support the decision regarding the nature and length of punish-
        ment.

2. CRIMINAL LAW — SENTENCING — SENTENCING GUIDELINES — DE-
    PARTURE FROM GUIDELINES.
    A trial court's reasons for departing from the recommended

REFERENCES

Am Jur 2d, Criminal Law §§ 528, 595 *et seq.*
See also the annotations in the Index to Annotations under Sen-
tence and Punishment.

sentences in the sentencing guidelines must be stated both on the record and in the Sentencing Information Report, and a simple citation to the "ends of justice" is not a sufficient explanation for the departure.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Kim D. Johnson,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for defendant on appeal.

Before: ALLEN, P.J., and CYNAR and R. C. LIVO,* JJ.

PER CURIAM. On September 9, 1985, following a bench trial, defendant was convicted of voluntary manslaughter in violation of MCL 750.321; MSA 28.553. The sentencing guidelines recommended a minimum sentence range of from three to eight years. On September 18, 1985, defendant was sentenced to prison for not less than ten years and not more than fifteen years. Defendant appeals as of right.

On June 30, 1985, at approximately 7:30 P.M. defendant and Cynthia Curry went to visit Kelly Leonard, a neighbor of defendant who lived on San Juan Street in the City of Detroit. At that time, the defendant, Cynthia Curry and Kelly Leonard went to a local liquor store and Leonard purchased ten forty-ounce bottles of Colt 45 beer, two half pints of Martel cognac, and one bottle of white Wild Irish Rose wine.

Thereafter, the three individuals returned to Leonard's house and began consuming the alcoholic beverages. At approximately 8:30 P.M. that

---

* Circuit judge, sitting on the Court of Appeals by assignment.

evening, Curry left Leonard's house. In the meantime, defendant and Leonard continued drinking the alcoholic beverages. At about 10:00 P.M., Curry returned with another girlfriend. Curry had a discussion with Leonard, and Curry and her friend left Leonard's house.

At approximately midnight, Curry returned once more to Leonard's home and, according to defendant's testimony, appeared in distress. By this time Leonard had fallen asleep. Defendant proceeded to get Curry a towel from the bathroom since she was crying and she appeared extremely upset. While defendant was busy getting Curry a towel, she took $300 from Leonard's pocket and fled from the house.

Upon defendant's return from the bathroom, he realized that Curry had just stolen Leonard's money. Defendant then set out towards Curry's house, which was half a block away from Leonard's home. When defendant reached Curry's home, he discovered that she was not there. Thereafter, defendant started walking back to Leonard's home. On his way back to Leonard's home, defendant encountered Deyone Gilliam, Curry's boyfriend. Gilliam and defendant fought briefly and, afterwards, defendant returned to Leonard's home.

After defendant returned to Leonard's home, Leonard obtained his revolver and the two of them proceeded back toward Curry's home. Defendant and Gilliam began fighting once more. Gilliam bit the defendant on the left side of his cheek. Defendant than lost all control and stabbed Gilliam. Gilliam died shortly thereafter. Two weeks later, defendant turned himself in to the police.

At trial, several witnesses recounted the second fight between defendant and Gilliam. Leonard testified that upon discovering that Curry had stolen his money, he and defendant proceeded to her

home. They met Gilliam, and defendant and Gilliam began fighting and, after several blows were exchanged, defendant produced a knife and stabbed Gilliam. Vernell Britton, a resident of San Juan Street, testified that he was awakened at 2:00 A.M. the morning of July 1, 1985, by noises outside on the street. He saw defendant fighting with Gilliam. Gilliam was attempting to escape and he heard a third person state, "Shoot him in the head," and Gilliam ran.

Additionally, Detroit Police Officer Patrick Flanagan testified that he found the victim lying in an alley with a stab wound. The officer took a statement from the victim wherein he told the officer that defendant had stabbed him.

The trial court convicted defendant of voluntary manslaughter.

Defendant submits two issues for our consideration. First, defendant contends that the trial court erred by not indicating on the record the reasons for imposing sentence. We agree.

Defendant claims that the trial court failed to articulate on the record its reason for imposing the sentence as required by *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983). Under *Coles,* to aid appellate review, the trial judge is required to indicate the criteria considered in imposing sentence and the reasons which support the court's decision regarding the nature and length of punishment. *Coles, supra,* 550. The purpose of the *Coles* articulation requirement is to improve the justification for the sentence and to develop a rational policy on which to base sentencing in the future. *Coles, supra,* 549.

Prior to imposing sentence, the judge, in response to defendant's request for mercy, stated it was difficult to be merciful when a life had just been "wiped out" because of defendant's action.

Defendant claims that this did not constitute a reason for the sentence imposed and, alternatively, even if it is a reason for the sentence, it is insufficient under *People v Snow,* 386 Mich 586; 194 NW2d 314 (1972), *Coles, supra,* and *People v Ross,* 145 Mich App 483, 495-496; 378 NW2d 517 (1985), because the judge did not use the proper criteria as enunciated in those decisions.

The people argue that the statement by the judge with respect to a "life that has just been wiped out" does constitute a reason for the imposition of the sentence. Even though this reason was not specifically endorsed in the *Snow* decision[1] as an appropriate factor to be considered before sentencing, it is a valid factor for consideration nonetheless. In support of this position, the people refer to the *Coles* opinion, which stated that the *Snow* factors are "not exhaustive, and we do not purport to instruct the trial courts on every criterion which they must consider when imposing a sentence." *Coles, supra,* 550. Therefore, the people contend that the trial judge complied with *Coles* by stating a proper reason on the record for the sentence imposed.

It is our opinion that the trial judge did not comply with the criteria as contemplated by *Coles, supra.* In response to defendant's plea for mercy the judge stated: "It's somewhat difficult to be merciful when there is a life that has just been wiped out, here one minute and gone the next minute because you chose to take the action you did." This statement appears to be insufficient for appellate review as contemplated by *Coles, supra.* If the purpose of the articulation requirement is to facilitate appellate review of sentences, then trial

[1] The *Snow* factors include: (a) reformation of the offender; (b) protection of society; (c) disciplining of the wrongdoer; and (d) deterrence of others. *Snow,* 592.

judges should state specifically what criteria they used and the reasons supporting their sentencing decisions. While we agree with the people that the *Snow* criteria are not all-inclusive and trial judges are free to consider other factors, the statement made by the instant trial judge does not facilitate appellate review of defendant's sentence since it is not clear from the record which criteria were considered and what reasons support her decision.

As to defendant's claim that the sentence imposed was excessive, that issue cannot be decided until the judge states on the record her reasons for the sentence. Thus, remand is necessary for the trial judge to articulate on the record the reasons and criteria for the sentence.

We are not able to respond to the question of whether the trial court erred by departing from the sentencing guidelines, because the trial court gave no specific reason for departure.

Although the sentencing guidelines' departure policy permits departure from the guidelines, the reasons for such action must be stated on both the record and the Sentencing Information Report. The people argue that although the trial judge did not explain her departure reasons on the record, she did state the departure reason on the SIR. The only reason listed on the report, however, was the cryptic phrase, "best interests of justice."

According to *People v Good,* 141 Mich App 351; 367 NW2d 863 (1985), it is sufficient for the sentencing judge to state the reasons for departure on the SIR. However, according to *People v Fleming,* 142 Mich App 119; 369 NW2d 499 (1985), lv gtd 424 Mich 877 (1986), the departure reasons must be placed on the record in addition to the SIR. In this case, there was a lack of compliance under either *Fleming, supra,* or *Good, supra.* The depar-

ture reason stated on the SIR was insufficient. The departure policy stated in the guidelines requires specific reasons for departure, and in this instance the departure reason, "best interests of justice," does not satisfy that requirement. The guidelines' departure policy specifically notes that a simple citation to "the ends of justice" would be an insufficient explanation of departure.

We remand for the trial court to state reasons for departing from the recommended sentencing guidelines range. The trial court is to state its reasons on the record and on the SIR for the sentence imposed. We do not retain jurisdiction.

Remanded.