*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEVON KAREEM-BUCKINGH ROBINSON,

        Defendant-Appellant.

UNPUBLISHED
November 17, 2025
10:29 AM

No. 372753
Wayne County Circuit Court
LC No. 19-008817-01-FC

Before: GADOLA, C.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

When he was 18-years-old, defendant, Devon Kareem Robinson, murdered three strangers after a late-night sexual encounter with them. A jury convicted him of three counts of first-degree murder and other crimes, and the trial court imposed mandatory sentences of life in prison without the possibility of parole. But following our Supreme Court's determination that such a sentence— "without considering the attributes of youth"—violates the 1963 Michigan Constitution's proscription against cruel or unusual punishment, *People v Parks*, 510 Mich 161, 176; 987 NW2d 161 (2022), this Court remanded for resentencing. The trial court then imposed a 35- to 60-year sentence for his first-degree murder convictions. On appeal from that resentencing, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

This Court previously described how defendant met and murdered his three victims within just a few hours as follows:

> This case arises from the murders of Timothy Blancher, Alunte Davis, and Paris Cameron. The murders occurred while Blancher, Cameron, and Davis were in a home located at 3474 Devonshire Street in Detroit. Blancher, Cameron, and Davis died after defendant shot them multiple times. Clifton Keys and Armon Matthews were also present in the home at the time of the murders, but they escaped the gunfire.
>
> On May 24, 2019, Lance Atterberry had a party at his home at 3474 Devonshire Street. In relevant part, Blancher, Cameron, Davis, Keys, Matthews,

and Brandon Suttles attended the party. At about 2:30 a.m., on May 25, 2019, Blancher, Cameron, Davis, Keys, and Matthews went to a nearby BP gas station. Defendant was at the gas station when they arrived. Cameron approached defendant and invited him to the party even though he was a stranger. Defendant went to the party, where he engaged in sexual activities with Blancher, Cameron, Davis, and two other individuals. Several guests joked about the "orgy" and defendant's sexuality.

Atterberry, Blancher, Cameron, Davis, Keys, Matthews, and Suttles were present when defendant left the house, with Keys and Matthews noting that defendant's demeanor was concerning and that defendant informed them that they would "see [him] again." Atterberry and Suttles later left 3474 Devonshire Street and drove to the other side of Detroit. Blancher, Cameron, Davis, Keys, and Matthews remained in the home and waited for Suttles and Atterberry to return. As they were sitting around a table and "laughing" about the events that occurred, an individual wearing a ski mask entered the home and began shooting. Keys saw the shooter's eyes and noted he had the same complexion as defendant. Keys and Matthews, who could not see the shooter, were able to avoid the gunfire. Blancher, Cameron, and Davis were fatally wounded. [*People v Robinson*, unpublished per curiam opinion of the Court of Appeals, issued October 27, 2022 (Docket No. 356401), p 1-2.]

For these acts, a jury convicted Robinson of three counts of first-degree murder, two counts of assault with intent to murder, and five counts of felony firearm. As relevant here, the trial court imposed mandatory life-without-parole sentences for his murder counts.

Defendant appealed, and this Court affirmed his convictions. *Id*. at 3-6. But binding intervening authority required vacating his life sentences. *Id*. at 6-7. That is, our Supreme Court held during the pendency of his appeal that "mandatorily subjecting 18-year-old defendants to life in prison, without first considering the attributes of youth, is unusually excessive imprisonment and thus is a disproportionate sentence that constitutes 'cruel or unusual punishment' " under Article 1, § 16 of Michigan's Constitution. *Parks*, 510 Mich at 176. So, in light of *Parks*, this Court remanded for resentencing on the life sentences. *Robinson*, unpub op at 6-7.

Following defendant's unsuccessful application for leave to appeal in the Supreme Court, the trial court conducted a resentencing hearing in July 2024 (at which point defendant was 23-years-old) and imposed 35- to 60-years' imprisonment for each first-degree murder conviction. In so doing, the trial court reviewed the Presentence Investigation Report, took victim impact statements, heard counsel arguments and allocution from defendant, and considered the statutory sentencing requirements (25 to 40-year minimum term of imprisonment, with the maximum being not less than 60 years, MCL 769.25(10); MCL 769.25a(4)(c)). The trial court reasoned:

Mr. Robinson, the Court has received a number of pleadings filed by the People as well as a brief filed by your appellate counsels. And the Court has reviewed all of the exhibits that have been provided to the Court.

-2-

I presided over the trial so the Court did hear a lot of the evidence, the facts in evidence in this particular case. The Court has considered the *Miller* factors as it relates to whether or not they would be mitigating in terms of the sentence that you would receive. I will say for this record that the Court was struck when it was reviewing the documentation provided by appellate counsel wherein you Mr. Robinson indicated that your behavior or your actions on that night was associated with nonconsensual sex with the parties that were present in the home.

I was struck by that because from my perspective having sat through the trial and heard the evidence in this particular case it seems as if you're offering yet another excuse for why you did what you did. I know the People's theory of the case was that you were not able to deal with your own sexuality and that's why you left that home and went back to your home and changed your clothes and 50 minutes later came back and shot up the home and killed three people and almost killed two other people.

And so now the explanation that the Court is getting is that you were the victim of nonconsensual sex in this home and that's why you did what you did. I appreciate the statements that you're making on the record today that you are remorseful. I appreciate that you are apologizing to the family.

This was not an impulsive act. This was not an impulsive act. You left that home. You went back to your house. You changed clothes. You came back and you shot three people to death and nearly killed two others.

As indicted on the record that the injuries were sustained by the victims in this case; it was your, you wanted to kill them. You came back to kill everyone in that home. Based upon everything that the Court has reviewed, the documentation that's been provided by appellate counsel along with the presentence investigation report, the Court's consideration of the *Miller* factors in this case as well as the statute you will be sentenced to no less than 35 years and no more than 60 years for each of the three counts of homicide and the first-degree premeditated.

Defendant now appeals, asserting the trial court failed to consider his youth as a mitigating factor.

Before turning to the appeal, we are compelled to comment on the briefing in this matter. We recognize the prosecutor's office was not obligated to file an appellee brief, *cf People v Smith*, 439 Mich 954, 954 (1992), but not doing so risks having us render a decision on the merits without the benefit of adversarial briefing, see *People v Hatfield*, 46 Mich App 149, 151; 207 NW2d 485 (1973). We thankfully have that here, but barely so. The Wayne County Prosecutor's Office tardily filed its appellee brief just one week before we heard argument in this case (and six months after defendant filed his appellant's brief). There are of course many understandable reasons for delayed filings. The consequences of doing so, however, affect oral argument preparation and, in this case, the ability to file a reply brief before oral argument. We thus emphasize our desire that parties timely file briefs to best aid in our consideration of every case before us.

## II. ANALYSIS

### A. SENTENCING OVERVIEW

Courts must impose reasonable sentences. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A sentence is reasonable if it adheres to the "principle of proportionality." *Id*. That means it is "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 474, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). In arriving at a proportionate sentence, a sentencing court must consider the four *Snow* factors. See *People v Snow*, 386 Mich 586, 194 NW2d 314 (1972). Those factors "are: (1) 'reformation of the offender'; (2) 'protection of society'; (3) 'disciplining of the wrongdoer'; and (4) 'deterrence of others from committing like offenses.' " *People v Boykin*, 510 Mich 171, 188; 987 NW2d 58 (2022) quoting *Snow*, 386 Mich at 592. And it must "state on the record which criteria were considered and what reasons support the court's decision regarding the length and nature of punishment imposed." *People v Coles*, 417 Mich 523, 549; 339 NW2d 440 (1983), overruled on other grounds by *Milbourn*, 435 Mich at 635. This Court reviews sentences for an abuse of discretion, which occurs when a sentencing court imposes an unreasonable sentence. *Steanhouse*, 500 Mich at 471.

### B. SENTENCING YOUTHS

Review of Robinson's sentence begins with the United States Supreme Court's decision in *Miller v Alabama*, which held that mandatory life without the possibility of parole sentences for those under the age of 18 at the time of their crimes constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. 567 US 460; 132 S Ct 2455; 183 L Ed 407 (2012). The Court also held sentencing courts may still exercise their discretion to impose life sentences on juveniles (after consideration of certain factors set forth next), *id*. at 477-479, but emphasized that they must be able to impose lesser sentences by considering the "mitigating qualities of youth," *id*. at 476 (quotation marks and citation omitted). Our Supreme Court has since extended *Miller*'s holding under Michigan's similar constitutional proscription to include 18-year-old offenders, like defendant here, *Parks*, 510 Mich at 244-245, as well as 19- and 20-year-olds, *People v Taylor*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 166428 and 166654); slip op at 2, 37-38.

*Miller* begat numerous changes to Michigan's sentencing scheme, including the elimination of mandatory life sentences for juveniles. See, e.g., MCL 769.25; MCL 769.25a. Consistent with *Miller*, a trial judge may still impose a life-without-the-possibility-of-parole sentence upon a motion by the prosecutor and following a hearing that considers the so-called *Miller* factors. MCL 769.25(6). These factors are "(1) the juvenile's chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile's family and home environment—from which he cannot usually extricate himself—no matter how brutal or dysfunctional; (3) the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him; (4) the incompetencies of youth, which affect whether the juvenile might have been charged with and convicted of a lesser crime, for example, because the juvenile was unable to deal with law enforcement or prosecutors or because the juvenile did not have the capacity to assist their attorney in their own defense; and (5) the juvenile's possibility of

-4-

rehabilitation." *People v Taylor*, 510 Mich 112, 126; 987 NW2d 132 (2022), quoting *Miller*, 567 US at 477-478 (quotation marks omitted).

Left in the wake of *Miller*—and our Supreme Court's extension of it—is how trial courts must consider youth going forward. In *Boykin* the Supreme Court answered that question: "Sentencing courts must consider youth as a mitigating factor at sentencing hearings . . . when the defendant is sentenced to a term of years." 510 Mich at 196. And they do so by considering "the *Snow* factors, which necessarily include consideration of youth as a mitigating factor." *Id*. This is so, reasoned *Boykin*, because each *Snow* factor implicates youth:

> For example, since a greater possibility exists that a minor's character deficiencies will be reformed, the mitigating qualities of youth necessarily transform the analysis of the first *Snow* criterion. Without considering the mitigating factors of youth, then, a sentence cannot adequately address the reformation of the offender. Next, because youth have a heightened capacity for change relative to adults, the needs for protecting society should be given individualized consideration, which necessarily considers the way youth affects the defendant's ability to change. In addition, because it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character, *Snow*'s focus on discipline of the wrongdoer must be viewed differently under the lens of youth. Nor can deterrence do the work in this context, because the same characteristics that render juveniles less culpable than adults make them less likely to consider potential punishment. [*Id*. at 188-189 (alterations, quotation marks, and internal citations omitted).]

To repeat, *Boykin* sets forth a specific requirement for courts sentencing defendants like Robinson: "in all sentencing hearings conducted under MCL 769.25 or MCL 769.25a, trial courts are to consider the defendant's youth and must treat it as a mitigating factor." *Boykin*, 510 Mich at 189. The *Boykin* Court, like it had in *Taylor*, again instructed trial courts to be cautious not to turn consideration of a defendant's youth into an aggravating factor. *Id*. at 195 ("[Y]outh is a mitigating factor at sentencing, not an aggravating factor."); *Taylor*, 510 Mich at 139 n 25 ("We caution the trial courts to ensure that the *Miller* factors are not used as aggravators.").

Importantly, *Boykin* also held that there is "no requirement for an on-the-record articulation of how youth or the *Miller* factors affected a sentence . . . ." *Id*. at 192. "[I]f the sentencer has discretion to consider the defendant's youth," reasoned *Boykin*, "the sentencer necessarily *will* consider the defendant's youth, especially if defense counsel advances an argument based on the defendant's youth. Faced with a convicted murderer who was . . . 18 at the time of the offense and with defense arguments focused on the defendant's youth, it would be all but impossible for a sentencer to avoid considering that mitigating factor." *Id*. at 193 (quotation marks and citation omitted). Indeed, *Boykin* preserved a sentencing court's discretion "to articulate how an offender's youth or the *Miller* factors apply to th[e] particular offender's sentence," which "enhance[s] an appellate court's ability to review the proportionality of that sentence." *Id*. at 194 n 9.

This Court's decision in *People v Copeland* illustrates *Boykin*'s application. --- Mich App ---; --- NW3d --- (2024) (Docket No. 363925). The defendant there claimed the trial court did not adequately justify its sentence because it failed to "consider the mitigating qualities of youth within

*Snow*'s sentencing criteria" based on the record being devoid of statements reflecting consideration of youth. *Id.* at ___; slip op at 4. Relying directly on *Boykin*, the *Copeland* Court responded: "[T]here is no requirement that a trial court resentencing a defendant to a term-of-years sentence . . . articulate on the record its consideration of the mitigating qualities of youth within *Snow*'s sentencing criteria. . . . [T]here are no magic words or phrases that a trial court must use to show that it adequately considered the mitigating qualities of youth." *Id.* And in reviewing the trial court's reasoning, this Court found record support for such consideration, which was properly informed by the years that had passed since the offense: "defendant was not a juvenile at the time of his resentencing, but instead had already served over 20 years in prison. It follows that when the trial court was considering the *Snow* factors, it was doing so with the benefit of hindsight." *Id.* at 5 (footnote omitted).

*Boykin*'s no-articulation standard, as attractive as its plain and straightforward dictate may be, does not easily comport with the abuse-of-discretion standard this Court applies to reviewing trial courts' sentencing decisions. As persuasively reasoned by Judge BOONSTRA in a recent concurrence, it is "inherently impossible" to ensure that a trial court considers a juvenile offender's youth under *Parks* and *Taylor* when *Boykin* instructs that trial courts need not put on the record how it did so. See, e.g., *People v Abbatoy*, unpublished per curiam opinion of the Court of Appeals, issued Aug. 18, 2022 (Docket No. 357766) (BOONSTRA, J., concurring), p 2-3. We share similar concerns.

In practice, *Boykin*'s standard might counterintuitively incentivize trial courts to adopt a less-is-more approach—that is, to avoid articulating their sentencing reasoning or to minimize it to little more than an acknowledgment of the relevant case law governing sentencing, as was the case here. This inhibits appellate review. It seems to us that trial courts should do more than cite cases and set forth minimal or generally applicable sentencing rationales and instead state more clearly how they have considered an offender's youth when imposing a sentence. For how are we to conduct a constitutionally required and appropriate review of a sentence for reasonableness and proportionality without sufficient articulation of the rationale of the trial court plainly set forth in the record? Nor are we persuaded that *Boykin*'s conclusion that the *Snow* factors necessarily include considering youth, *Boykin*, 510 Mich at 188-189, justifies excusing a trial court from making an on-the-record statement about how it considered youth, especially because *Boykin* separately notes that "trial courts are not required to consider each of the [*Snow*] factors when imposing a sentence," *id.* at 183-184.

As the intermediate appellate court, we must of course apply *Boykin*'s holding to the contrary. To that we turn next.

## C. APPLICATION TO DEFENDANT'S SENTENCE

Robinson argues that the trial court's "brevity" in proclaiming his sentence demonstrates that it failed to consider his youth as a mitigating circumstance (through *Snow*'s prism) and indeed that its emphasis on the brutal nature of defendant's crimes and its finding that defendant acted

intentionally and not impulsively reflects that it treated Robinson's youth as "aggravating."[1] On this record and on abuse-of-discretion review, see *id*. at 182, we cannot agree.

We begin with what the trial court had before it. Robinson's PSIR detailed a troubled childhood due to his father's incarceration, his lack of stable housing, and drug abuse. The PSIR also extensively detailed his significant history of misconduct since being incarcerated, but also noted he took steps to complete some educational programs and that he was "working hard in improving his behavior." Also before the trial court was a well-prepared resentencing memorandum from his attorneys. That filing took issue with the consensual nature of the sex acts preceding the murders and extensively discussed the post-*Miller* legal developments that now require a court's consideration of youth when sentencing 18-year-old defendants. And, most important, Robinson's resentencing memorandum set forth how he thought the *Miller* factors applied to him. That section is replete with arguments tied to his youth. It asserts, for example, that his childhood difficulties—"experienc[ing] extreme poverty, and sexual assault," and being shot "while defending his mom when he was 17 years old"—limited his maturation. And in addition to victim impact statements and a brief allocution from defendant who indicated "regret" and asked for "forgiveness," both his counsel, and the prosecution, had extensive opportunities to further discuss the *Miller* factors at the resentencing hearing.

With this background, and *Boykin*'s instruction that trial courts need not "articulate a basis on the record to explain how youth affected the sentence imposed," 510 Mich at 193, we do not understand the trial court's brief statement in support of its sentence to run afoul of *Parks* and its progeny. Crucial here is the background animating the trial court's discussion. The trial court considered extensive materials detailing *Miller*'s application, expressly leading and concluding with that point, stating twice that it considered "the *Miller* factors as it relates to whether or not they would be mitigating in terms of the sentence that you would receive." And, as with *Copeland*, the trial court had the "benefit of hindsight," sentencing Robinson then as a 23-year-old with several years of incarceration behind him. *Copeland*, __ Mich App at ___; slip op at 5. So, to our eye, the record reveals the trial court appropriately considered Robinson's youth when resentencing him.

That the trial court relied heavily on the facts of Robinson's atrocious crimes does not give us pause. "[T]he circumstances of the crime remain a primary consideration in determining a proportionate sentence, . . . [and t]he factors of youth do not detract or preclude that consideration, they simply add" to it. *People v Nard*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369185), slip op at 9. The trial court's statements concerning Robinson's deliberateness reinforces its consideration of defendant's youth—in its view, Robinson did not act with the typical

---

[1] We briefly note issues not raised. Robinson does not contend that his presumptively proportional sentences are disproportionate. See, e.g., *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). Nor does Robinson argue the trial court inadequately articulated its reasoning for why it imposed those sentences. In certain circumstances, we have independently raised issues for defendants. See, e.g., *People v Billings*, 283 Mich App 538, 549; 770 NW2d 893 (2009). Although we wish the trial court would have done more to explain its reasoning, we see no reason to go beyond addressing defendant's preserved issues on appeal.

"characteristics of youth" like immaturity, impulsivity, and lack of discipline and self-restraint. See *People v Eads*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 357332), slip op at 15, quoting *Boykin*, 510 Mich at 188-189. Rather, Robinson had time to reflect following the group sexual encounter by leaving, returning to his house, changing clothes, and then retrieving a gun, donning a mask, and returning to murder those involved. The trial court reasonably concluded that Robinson's actions were not youthfully impulsive.

Others could view the fine line between intentionality and impulsivity differently. The prosecutor theorized that Robinson's struggles with his sexuality caused him to murder three individuals just after engaging in group sex with random strangers. And that framing, combined with defendant's tumultuous childhood, could be considered as reflective of the various "characteristics of youth," like immaturity, impulsivity, and lack of discipline and self-restraint. Yet, given the deference we must accord trial courts and the "no magic words" requirement, *Copeland*, ___ Mich App at ___; slip op at 4, we cannot agree with defendant's assertion that the trial court used the crime's facts—viewed through the youth lens—as a prohibited aggravating circumstance.

## III. CONCLUSION

In sum, although the trial court could have done significantly more to justify its resentencing of defendant to a term of 35- to 60-years imprisonment, it did enough to satisfy *Parks'* and *Boykin*'s requirement to consider his youth when imposing that sentence. For these reasons, we affirm the trial court's judgment.

/s/ Michael F. Gadola
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock